**TEXAS STANDARD OIL & GAS, L.P.,**
**Grimes Energy Co., and Petroval,**
**Inc., Appellants,**

v.

**FRANKEL OFFSHORE ENERGY,**
**INC. and FRANKEL RESOURCES**
**LLC, Appellees.**

**No. 14–11–00125–CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

July 7, 2011.

Charles A. Sharman, Bellaire, John Kim, Robert M. Roach, Jr., Houston, for appellants.

Geoffrey L. Harrison, Ashish Mahendru, Houston, for appellees.

Panel consists of Justices FROST, JAMISON, and McCALLY.

## ORDER

SHARON McCALLY, Justice.

Appellants Texas Standard Oil & Gas, L.P., Grimes Energy Co., and Petroval, Inc. April 4, 2011, motion to lower bond is pending before the Court. By the motion, Appellants seek review of the trial court's order signed March 30, 2011, determining the amount of security required for them to suspend enforcement of the court's judgment pending appeal. *See* Tex. Civ. Prac. & Rem.Code Ann. § 52.006(d) and Tex.R.App. P. 24.4. Appellants' motion to lower bond is denied.

This is Appellants' second motion to lower bond. Appellant's first motion asked that this Court "reverse the Order setting bond, hold that Appellants are not required to post a supersedeas bond on amounts awarded for purpose of punishing Appellants, **and set the proper amount of the bond based on costs and interest only.**" (emphasis supplied) By March 3, 2011, order [1], this Court granted appellant's first motion and reversed the trial court's initial determination of security, as it was improperly calculated upon damages that are, by order of the trial court, punitive in nature. Specifically, the March 3, 2011, order granted all relief Appellants sought and remanded the issue to the trial court to determine security from interest for the duration of the appeal and costs. On remand, the trial court calculated security solely from interest for the duration of the appeal because zero costs were awarded.[2]

By Appellant's second motion, they now ask that this Court reverse the new supersedeas order of the trial court and hold that they are not required to post security at all. In light of the record as a whole, including Appellant's initial request for relief, and this Court's March 3, 2011, order, we cannot say that the trial court abused its discretion in calculating security precisely as directed by this Court in its order granting Appellant's first motion.

Without the necessity of resort to a statutory construction of § 52.006, we conclude the trial court did not abuse its discretion in setting the bond. We further conclude, again in light of the current appellate record as a whole, that the trial court did not abuse its discretion in estimating an eighteen-month duration of the appeal. Therefore, appellants' (second) motion to lower the supersedeas bond is denied. The stay of post-judgment proceedings ordered on May 10, 2011, is lifted as of the date of this order.

JAMISON, J., concurring; FROST, J., dissenting.

MARTHA HILL JAMISON, Justice, concurrence to order.

This case, unique on its facts, brings to light an interesting question of statutory construction concerning section 52.006 of the Texas Civil Practice and Remedies Code. I join the disposition and analysis set forth in the order, concluding that the

---

1. This Court's original order fully sets forth the background and nature of the dispute; thus, it is omitted here.

2. Specifically, the trial court determined that the supersedeas bond should be posted in the amount of $300,628.12. This amount represents 18 months' post-judgment interest on the court's judgment.

statutory construction quandary need not be resolved in this case; however, I write separately to urge the legislature to clarify its intent under section 52.006.

**1. The statute setting the amounts necessary to supersede a judgment states that it includes "interest for the estimated duration of the appeal."**

In 2003, the Texas Legislature decided that the amount of security necessary to supersede a judgment would no longer include punitive damages. Specifically, it changed the amount of security required from "*at least the amount of the judgment, interest for the estimated duration of the appeal, and costs*" to "*the sum of compensatory damages awarded in the judgment, interest for the estimated duration of the appeal, and costs awarded in the judgment.*" *Compare* former Tex.R.App. P. 24.2(a)(1) (eff. Sept. 1, 1997) (amended Aug. 29, 2003 and Sept. 10, 2003, eff. Sept. 1, 2003; amended Mar. 10, 2008 and Aug. 20, 2008, eff. Sept. 1, 2008), *with* Tex.R.App. P. 24.2(a)(1) (implementing Tex. Civ. Prac. & Rem.Code § 52.006) (emphases added). Thus, the current version of the statute requires the following security amounts to supersede a judgment: "(1) the amount of compensatory damages awarded in the judgment; (2) interest for the estimated duration of the appeal; and (3) costs awarded in the judgment." Tex. Civ. Prac. & Rem.Code § 52.006(a).[1] This court has previously described the language of section 52.006 as "plain." *Ramco Oil & Gas, Ltd. v. Anglo Dutch (Tenge) L.L.C.*, 171 S.W.3d 905, 913 (Tex.App.-Houston [14th Dist.] 2005, published order) ("We must not engage in forced or strained construction; instead, we must yield to the plain sense of the words the Legislature chose.").

Movants suggest that a reading of subsection 52.006(a)(2) without implying the following extra words would be unreasonable: "interest [**on the amount of compensatory damages awarded in the judgment**] for the estimated duration of the appeal." *See id.* § 52.006(a)(2). This position is contrary to the holding of our sister court, in *Shook v. Walden,* that "Section 52.006, subsection (a)(2) requires [a judgment debtor] to secure the post-judgment interest that is estimated to accrue during the pendency of the appeal, not merely the estimated post-judgment interest on the contract damages or compensatory damages." 304 S.W.3d 910, 929 (Tex.App.-Austin 2010, no pet.).

The legislature easily could have included additional language restricting the sums on which post-judgment interest was to be calculated for security purposes, if that were its intention, but it did not do so. By specifically referencing only "compensatory damages" in subsection 52.006(a)(1), the legislature clearly expressed an intent to omit punitive damages themselves from the total to be secured, but it did not express the same intent with regard to interest on punitive damages.

**2. Post-judgment interest—even on punitive damages—is compensatory.**

The purpose of post-judgment interest is compensatory. It compensates a plaintiff for the time-value of money as of the date of judgment: it is not punitive. *See Long v. Castle Tex. Prod. Ltd. P'ship,* 330 S.W.3d 749, 751 (Tex.App.-Tyler 2010, pet. filed) ("Postjudgment interest is compensation allowed by law for the use or detention of money, computed from the date of rendition of judgment until the date of satisfaction."); *Sisters of Charity of the*

---

1. Pursuant to subsection 52.006(b), the security amounts required under subsection 52.006(a) may not exceed "(1) 50 percent of the judgment debtor's net worth; or (2) $25 million." Tex. Civ. Prac. & Rem.Code § 52.006.

*Incarnate Word v. Dunsmoor*, 832 S.W.2d 112, 119 (Tex.App.-Austin 1992, writ denied) (same); *see also State v. Public Utility Com'n of Texas*, 344 S.W.3d 349, 377 (Tex.2011) ("[A] full recovery ... must include interest to reflect the time value of money"); *Miga v. Jensen*, 96 S.W.3d 207, 212 (Tex.2002) ("Post-judgment interest is not a punishment inflicted on a judgment debtor for exercising the right to appeal. Instead, like pre-judgment interest, post-judgment interest is simply compensation for a judgment creditor's lost opportunity to invest the money awarded as damages at trial.").

Post-judgment interest for the lost use of a punitive damages award, calculated from the date of judgment until payment of the award, compensates the judgment creditor in the same way as post-judgment interest on a compensatory damages award does.[2] By not expressly excluding punitive damages from the calculation of post-judgment interest under section 52.006(a), the legislature manifested its intent that interest on such damages was to be included in the amount for which security was required.

"The early common law viewed any interest as usurious and illegal." Anthony E. Rothschild, *Prejudgment Interest: Survey and Suggestion*, 77 Nw. U.L. Rev. 192, 195 (1982). Ultimately, however, the rise in commercial activity led courts to view interest as proper consideration for the use of money. *See id.* at 195–96 (citing C. Mccormick, Damages § 5 (1935)) ("It could by then be seen that the real evil was not the taking of payment for the lending of money, but taking such payment in an extortionate or unconscionable amount"). Courts began to see that it was necessary for awards to include interest for the primary goal of damages—full compensation—to be achieved. *Id.* at 196; *see also Newburgh Land & Dock Co. v. Tex. Co.*, 227 F.2d 732, 734 (2d Cir.1955) (explaining that "interest is awarded on the theory that it is indemnity for the delay in paying for the loss.").[3]

Post-judgment interest in Texas is governed by the Finance Code and other statutes. *See Phillips Petroleum Co. v. Riverview Gas Compression Co.*, 409 F.Supp. 486, 496 (N.D.Tex.1976) ("In Texas, the right to post-judgment interest is provided by Statute."); *Jarrin v. Sam White Oldsmobile Co.*, 929 S.W.2d 21, 25 (Tex.App.-Houston [1st Dist.] 1996, writ denied) ("Post-judgment interest is ... mandated by statute."). Thus, whether it should be limited on certain types of damages or should not be considered in the calculation of a supersedeas bond is a matter left entirely to the legislature and not within the purview of this court: it is a matter of pure statutory construction rather than a common law issue.[4] The legislature, as set

---

**2.** *See Arete Partners, L.P. v. Gunnerman*, 643 F.3d 410, 413, n. 3 (5th Cir.2011) ("In addition to compensating a plaintiff for the lost use of funds, a potential award of prejudgment interest is intended to: (1) encourage settlement; and (2) expedite both settlements and trials by removing incentives for defendants to delay without creating such incentives for plaintiffs." [internal quotation marks omitted] ).

**3.** *Accord* Robert J. Sergesketter, *Interesting Inequities: Bringing Symmetry and Certainty to Prejudgment Interest Law in Texas*, 32 HOUS. L. REV. 231, 235 (1995) (noting that courts began to see interest as legitimate basis for awarding additional damages in civil actions).

**4.** Indeed, as the Legislature has defined "exemplary damages," they would *never* include post-judgment interest: " 'Exemplary damages' means any damages awarded as a penalty or by way of punishment *but not for compensatory purposes.*" Tex. Civ. Prac. & Rem.Code Ann. § 41.001(5) (Vernon 2008) (emphasis added). Compensatory damages, on the other hand, include economic damages

forth below, has otherwise regulated post-judgment interest by setting the interest rate and subsequently lowering it. It has also, in a straightforward manner, prohibited prejudgment interest on punitive damages, *see* Texas Civil Practice & Remedies Code § 41.007 ("Prejudgment interest may not be assessed or recovered on an award of exemplary damages."), and it easily could have done the same in § 52.006(a) if that were its intention.

### 3. The legislature left a gray area in rebalancing interests between judgment creditors and judgment debtors.

Section 52.006 was enacted as part of the seminal 2003 legislation commonly referred to as House Bill Four (H.B.4). *See* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 52.006(a), 2003 Tex. Gen. Laws 847, 863, codified at Tex. Civ. Prac. & Rem. Code Ann. § 52.006(a); *see also* Tex. R.App. P. 24.2(a)(1) (implementing Section 52.006); *Shook*, 304 S.W.3d at 918. The changes made in H.B. 4 were intended to provide a measure of relief to judgment debtors seeking to appeal by making it less costly to bond the judgment. *See* Jonathan Yedor & Regina M. Uhl, *Superseding Attorney's Fees and Pre-judgment Interest After House Bill 4*, 36 St. Mary's L.J. 657, 658 (2005). Historically, however, the purpose of a supersedeas bond had been to protect the judgment creditor from incurring damages that result from delay in enforcing the judgment pending appeal. Elaine A. Carlson, *Reshuffling the Deck: Enforcing and Superseding Civil Judgments on Appeal After House Bill 4*, 46 S. Tex. L. Rev. 1035, 1083 (2005). Full protection of the judgment creditor requires the inclusion of post-judgment interest. *Id.* at 1083–84

(citing *Kennesaw Life & Accident Ins. Co. v. Streetman*, 644 S.W.2d 915, 917 (Tex. App.-Austin 1983, writ ref'd n.r.e.); *Cooper v. Bowser*, 583 S.W.2d 805, 807 (Tex.Civ. App.-San Antonio 1979, no writ) ("A supersedeas bond that does not include interest is 'patently insufficient.' ")).

H.B.4 attempted to strike a balance between the interests of judgment creditors and judgment debtors. Instead of being required to provide security in the full amount of the judgment, interest, and costs (as judgment debtors seeking to appeal formerly were required to do), the judgment debtor may now more easily suspend enforcement of money judgments by posting security only on "compensatory damages," "interest for the duration of appeal," and "costs awarded in the judgment." *Id.* at 1038 (citing section 52.006). Additionally, section 52.006 places a cap of the lesser of $25 million or 50% of the debtor's net worth on the amount of security to be provided. *Id.* Further under H.B.4, the legislature decreased the prejudgment and post-judgment interest rates. *Id.* at 1038, 1084–85. Under Finance Code section 304.003(c), the post-judgment interest rate was lowered from a minimum of 10% to a minimum of 5% tied to the prime rate. *Id.* at 1084–85 (citing Tex. Fin.Code Ann. § 304.003(c) (Vernon Supp.2004)). In making these amendments, the legislature further served the purpose behind H.B.4 of lessening the financial burden to a judgment debtor seeking appellate review. *Id.* at 1038.

This rebalancing effort did not, however, wholly discard the original interest in protecting judgment creditors from suffering the harms of unsecured and unpaid judgments. *See id.* at 1038, 1084. Indeed, just

("compensatory damages intended to compensate a claimant for actual economic or pecuniary loss") and noneconomic damages. *Id.* § 41.001(4), (8). Compensatory damages

may include "future damages," which are defined as "damages that are incurred after the date of judgment" not including "exemplary damages." *Id.* § 41.001(9).

how far the rebalancing was intended to go is not entirely clear; section 52.006 does not indicate that post-judgment interest on punitive damages is to be excluded in calculating the amount of security.[5] *Id.* The language of section 52.006(a)(2) did not change at all. Neither H.B.4 nor section 52.006 expressly indicates that the treatment of post-judgment interest was to change after 2003, with the exception of situations when the judgment cap has been met. *See* Act of June 2, 2003, 78th Leg., R.S., ch. 204, §§ 7.02, 52.006(a), 2003 Tex. Gen. Laws 847, codified at Tex. Civ. Prac. & Rem.Code Ann. § 52.006(a).

I would find that reducing the supersedeas bond in the instant case from over four million dollars to $300,628.12, as the trial court did here, is a rebalancing in accordance with the legislature's intent and thus not an abuse of the trial court's discretion. To the extent that there is doubt regarding whether the award of post-judgment interest on punitive damages should be included in the amount of security required to supersede a judgment, I urge the legislature to provide additional guidance to the courts on this issue.

KEM THOMPSON FROST, Justice, dissenting.

> *"Interest shall follow the principal, as the shadow the body."*
>
> *Beckford v. Tobin,* 27 Eng. Rep. 1049, 1051 (Ch. 1749).

The Texas Legislature has decided that in calculating the amount of security necessary to supersede a money judgment punitive damages are not included in the

principal amount of the calculation. The trial court concluded that, although the four million dollars in punitive damages it awarded are excluded from the principal of the security-amount calculation, these damages are included in calculating the interest. In doing so, the trial court contradicted the unambiguous language of the applicable statute and violated the firmly embedded rule that interest follows principal. In its order today, this court does not address the construction of the applicable statute; instead, the court concludes that the trial court did not err because it calculated the security amount precisely as directed by this court in a prior order and as requested by the judgment debtors in a prior motion in this court. In the prior motion, the judgment debtors did not request that interest on the punitive damages be included in the security-amount calculation, and this court did not order the trial court to calculate the security amount in this manner. This court should grant the judgment debtors' pending motion to lower bond to the extent they request this court to order that the security amounts be lowered to zero for each judgment debtor.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellee/plaintiff Frankel Offshore Energy, Inc. (hereinafter "Frankel") filed suit in the trial court against appellants/defendants Texas Standard Oil & Gas, L.P., Grimes Energy Co., and PetroVal, Inc. (hereinafter collectively, the "Judgment Debtors"), asserting various claims including fraud and breach of fiduciary duty.[1]

---

5. Certainly, if the amount of security meets the cap for money judgments, then the inclusion of additional interest, post-judgment or otherwise, is not necessary. Carlson, *supra,* at 1084. If an amount is not posted at the cap, however, the bond, deposit or security should cover the interest for the duration of the appeal. *Id.* at 1099. "If the security

becomes inadequate because it does not sufficiently cover post-judgment interest, the judgment creditor may seek trial court modification of the security amount." *Id.*

1. Appellee/plaintiff Frankel Resources, LLC was not awarded any monetary recovery in

The case was tried to a jury, which found, among other things, that the Judgment Debtors breached fiduciary duties that they owed to Frankel. But the jury found that Frankel did not prove that these breaches of fiduciary duty proximately caused any damages to Frankel. In its final judgment, the trial court ordered that Frankel recover separate monetary awards against each of the Judgment Debtors, the total of which exceeds four million dollars.[2] The trial court ordered that Frankel recover these amounts as disgorgement of some of the profits the Judgment Debtors obtained through breach of their fiduciary duties. The trial court awarded these amounts to Frankel under an equitable-disgorgement remedy based upon the Judgment Debtors' breaches of fiduciary duty, rather than as actual damages. The trial court did not award any costs of court in its judgment, nor did the trial court award any other monetary relief against the Judgment Debtors.[3]

After the trial court signed the judgment, the Judgment Debtors filed a motion asking the trial court to determine whether the amounts awarded as disgorgement were compensatory or punitive in nature, so that the Judgment Debtors could determine whether these awards were "compensatory damages" included in the amount of security necessary to supersede the judgment. *See* Tex. Civ. Prac. & Rem. Code Ann. § 52.006(a) (West 2008); Tex. R. App. P.

24.2(a)(1). The Judgment Debtors also asked the trial court to specify the amount of security that each of them would have to provide to supersede the judgment. On February 9, 2011, the trial court signed an order in which it determined that the disgorgement awards were punitive in nature. The trial court ordered that the security amount for each judgment debtor was the full amount of the disgorgement award against that judgment debtor. In calculating the security amount, the trial court did not include any interest on these disgorgement awards for the estimated duration of the appeal.

The Judgment Debtors filed a "Motion to Lower Bond" in this court under Texas Rule of Appellate Procedure 24.4.[4] They asserted that the trial court abused its discretion in calculating the security amount based upon disgorgement awards that the trial court characterized as punitive in nature. In this motion, the Judgment Debtors did not ask this court for a remand to the trial court; instead, the Judgment Debtors asked this court (1) to reverse the trial court's February 9, 2011 order, (2) hold that the Judgment Debtors are not required to post a supersedeas bond on damage awards characterized by the trial court as punitive in nature, and (3) lower the security amount set by the trial court by excluding the punitive awards.[5]

---

the trial court's judgment and is not discussed in this opinion.

**2.** The trial court ordered that Frankel recover the following amounts: $1,970,959.73 from Petroval, Inc., $1.359,643.55 from Grimes Energy Co., and $679,571.78 from Texas Standard Oil.

**3.** In the judgment, the trial court also made various orders relating to the rescission of a settlement agreement. But in these orders the trial court does not grant Frankel any monetary relief against the Judgment Debt-

ors, and these orders are not relevant to the issues raised by the Judgment Debtors' "Second Motion to Lower Bond."

**4.** In ruling on a motion under Texas Rule of Appellate Procedure 24.4, this court may require that the security amount set by the trial court be increased or decreased. *See* Tex. R. App. P. 24.4(d).

**5.** The Judgment Debtors specifically requested that this court "lower the amount of the bond by excluding the punitive award." Because the trial court had based its calculation

In an order issued March 3, 2011, this court granted the Judgment Debtors' first two requests but did not grant their third request. This court concluded that the trial court abused its discretion in setting the security amount for each of the Judgment Debtors at the amount of the respective disgorgement award. This court noted that the trial court had characterized the disgorgement awards as punitive rather than compensatory in nature and that Frankel had not challenged that finding. Therefore, this court concluded that, as a matter of law, these punitive disgorgement awards were not "compensatory damages" to be used in calculating the amount of security required to supersede the judgment. *See* Tex. Civ. Prac. & Rem. Code Ann. § 52.006(a); Tex. R. App. P. 24.2(a)(1). Rather than lowering the trial court's security amounts by deducting the amount of the respective disgorgement award, as requested by the Judgment Debtors, this court concluded that the record was insufficient to allow this court to calculate the security amount for each of the Judgment Debtors. Therefore, this court remanded "this issue to the trial court to determine the appropriate amount of security under section 52.006."

On remand, the Judgment Debtors argued that interest on the amounts of the disgorgement awards should not be included in calculating the security amounts; Frankel argued that such interest should be included. In its March 30, 2011 order the trial court adopted the construction of section 52.006(a) of the Texas Civil Prac-

tices and Remedies Code advanced by Frankel.[6] The trial court ruled that the estimated duration of the appeal was eighteen months. The trial court calculated the security amount for each of the Judgment Debtors based upon eighteen months of interest on the respective disgorgement award. The total of these amounts is $300,628.12. The trial court noted in its March 30, 2011 order that it did not include any amounts under subsections (a)(1) or (a)(3) of section 52.006. *See* Tex. Civ. Prac. & Rem. Code Ann. § 52.006(a) (stating that "subject to Subsection (b), when a judgment is for money, the amount of security must equal the sum of: (1) the amount of compensatory damages awarded in the judgment ... and (3) costs awarded in the judgment").

Now pending before this court is the Judgment Debtors' "Second Motion to Lower Bond." The Judgment Debtors have filed this motion under Texas Rule of Appellate Procedure 24.4, seeking appellate review of what they allege is an excessive amount of security required by the trial court to supersede the judgment from which they appeal in this case. *See* Tex. R. App. P. 24.4. The Judgment Debtors argue that under the applicable statute and rule, interest on punitive damages should not be used in calculating the security amount. The Judgment Debtors request that this court order that the amount of security needed to suspend the trial court's judgment is zero as to each of the Judgment Debtors.[7]

---

of the security amounts entirely on the punitive disgorgement awards, granting this request would have meant lowering the security amount for each of the Judgment Debtors to zero. The Judgment Debtors also made consistent, general requests that this court lower the security amount to an amount that "complies with Tex.R.App. P. 24.2(a)(1)" and to "the proper amount ... based on costs and interest only."

**6.** Unless otherwise specified, all statutory references in this opinion are to the Texas Civil Practice and Remedies Code.

**7.** There is no issue before this court as to how a judgment debtor supersedes a money judgment after the security amount has been determined to be zero, and no opinion is expressed regarding any such issues.

## II. Standard of Review

The alleged excessiveness of the amount of security, as determined by the trial court, is reviewed under Rule 24.4 using an abuse-of-discretion standard. *See Ramco Oil & Gas Ltd. v. Anglo Dutch (Tenge) L.L.C.*, 171 S.W.3d 905, 909 (Tex.App.-Houston [14th Dist.] 2005, published order). Generally, the test for abuse of discretion is whether the trial court acted without reference to any guiding rules and principles or whether the trial court acted arbitrarily and unreasonably. *Id.* at 910. But, a trial court has no discretion in determining what the law is and applying the law to the facts. *Id.* Accordingly, the trial court's interpretation of applicable statutes is reviewed de novo. *Id.* at 912. A failure by the trial court to analyze or apply the law correctly is an abuse of discretion. *Id.* at 910.

## III. Analysis

### Interest on punitive damages is not included in calculating the security amount.

The Judgment Debtors seek to supersede the trial court's money judgment against them, and they are contesting the trial court's determination of the security that they must provide to supersede that judgment. In this context, the Texas Legislature has decided that the amount necessary to supersede the judgment is the sum of the following:

(1) the amount of compensatory damages awarded in the judgment;

(2) interest for the estimated duration of the appeal; and

(3) costs awarded in the judgment.

Tex. Civ. Prac. & Rem. Code Ann. § 52.006(a); *see* Tex.R.App. P. 24.2(a)(1)

(implementing section 52.006(a)). Notwithstanding any other law, this security amount must not exceed the lesser of (1) fifty percent of the judgment debtor's net worth, or (2) $25 million.[8] *See* Tex. Civ. Prac. & Rem.Code Ann. § 52.006(b); *see* Tex.R.App. P. 24.2(a)(1).

In its February 9, 2011 order, the trial court characterized the disgorgement awards in its judgment as punitive in nature, and these awards are the only monetary awards made to Frankel in the judgment. In light of this characterization and the trial court's failure to award any costs in the judgment, the trial court correctly concluded on March 30, 2011, that it had not awarded any compensatory damages or costs in the judgment. Therefore, the only part of the section 52.006(a) calculation at issue is the amount of "interest for the estimated duration of the appeal." Tex. Civ. Prac. & Rem. Code Ann. § 52.006(a)(2). The trial court concluded that, even though the amounts of the punitive disgorgement awards are not included in calculating the security amounts, interest on these awards still should be included in the security-amount calculation. In their motion, the Judgment Debtors assert that the trial court erred in construing the statute in this manner.

In construing a statute, our objective is to determine and give effect to the Legislature's intent. *See Nat'l Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex. 2000). If possible, that intent must be ascertained from the language the Legislature used in the statute and not from examining extraneous matters for an intent the statute does not state. *Id.* If the meaning of the statutory language is unambiguous, this court adopts the interpre-

---

8. This cap on the security amount has not been triggered in the case under review, but it is relevant to the construction of the formula contained in section 52.006(a) for calculating the security amount. *See* Tex. Civ Prac & Rem. Code Ann. § 52.006(a).

tation supported by the plain meaning of the provision's words. *St. Luke's Episcopal Hosp. v. Agbor*, 952 S.W.2d 503, 505 (Tex.1997).

The term "interest" is not defined in this statute. In general, "interest" refers to compensation for the use, forbearance, or detention of money. *See Carl J. Battaglia, M.D., P.A. v. Alexander*, 177 S.W.3d 893, 907 (Tex.2005). In section 52.006(a), the Texas Legislature has established a formula to calculate the amount of the bond, deposit, or security necessary for the judgment debtor to supersede a money judgment and preclude efforts by the judgment creditor to collect the money judgment while appellate proceedings are pending. If a superseded judgment survives the appellate process intact, the judgment creditor is entitled to try to collect the amounts awarded in the judgment; however, the judgment creditor cannot collect these amounts while the judgment is superseded during the appellate process. To protect the judgment creditor, the law on superseding judgments seeks to provide the judgment creditor with an easy collection remedy after the appellate process ends. *See* Tex. R. App. P. 24.1(a) (generally allowing a judgment debtor to supersede a civil judgment by filing a good and sufficient supersedeas bond, making a deposit with the trial court clerk in lieu of a bond, or providing the alternate security ordered by the trial court); Tex. R. App. P. 43.5 (requiring a court of appeals that affirms or affirms as modified a trial court judgment to render judgment against any sureties on the appellant's supersedeas bond in the court of appeals's judgment).

Absent the superseding of the judgment by the judgment debtor, the judgment creditor might be able to quickly collect the full amount of the judgment. In that event, the judgment creditor would have the use of that money for the duration of the appellate process, and the judgment creditor would be allowed to keep this money if the judgment survives the appellate process intact. Therefore, in the context of section 52.006(a), "interest" compensates the judgment creditor for its inability to potentially obtain and use money collected on the judgment during the appellate process. The judgment creditor can receive this compensation only to the extent the judgment is upheld as a result of the appellate process. In that event, this interest component represents the time value of money for the duration of the appeal. *See State v. Public Utility Comm'n of Tex.*, 344 S.W.3d 349, 376–77 (Tex.2010) (equating interest with compensation for the time value of the principal amount of money); *State Farm Mut. Auto. Ins. Co. v. Norris*, 216 S.W.3d 819, 821 n. 1 (Tex.2006) (same as *Public Utility Comm'n of Tex.*); *Carl J. Battaglia, M.D., P.A.*, 177 S.W.3d at 907 (same); *City of Pearland v. Reliant Energy Entex*, 62 S.W.3d 253, 256 (Tex.App.-Houston [14th Dist.] 2001, pet. denied) (same).

Today, this court must decide the principal amount upon which the interest in section 52.006(a)(2) is to be calculated. Frankel asserts that this interest should be calculated upon the full amount of the judgment, including the amounts of any punitive damages awarded therein. But this construction of section 52.006(a) would mean that the interest component would compensate judgment creditors for the time value of awards that are not considered in calculating the security amount under section 52.006(a). Under this proffered construction, the interest calculated upon punitive damages awarded in the judgment would protect the full value of these awards in the event the judgment is affirmed on appeal. Yet, the Texas Legislature decided in 2003 that awards of punitive damages should not be protected by

the supersedeas process. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 52.006(a). Under the unambiguous language of section 52.006(a), the calculation of the security amount does not include any amount to protect any punitive damages awarded in the judgment. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 52.006(a).

By means of House Bill 4, the Texas Legislature, in 2003, effected sweeping changes to Chapter 52 and to Texas law regarding the superseding of civil judgments on appeal. *See* Act of June 2, 2003, 78th Leg., R.S., ch. 204, art. 7, 2003 Tex. Gen. Laws 847, 863; *Ramco Oil & Gas Ltd.*, 171 S.W.3d at 916–17; Elaine A. Carlson, *Reshuffling the Deck: Enforcing and Superseding Civil Judgments on Appeal After House Bill 4*, 46 S. Tex. L.Rev. 1035, 1093 (Summer 2005). These changes " 'reflect a shift in concern from that of protecting the judgment creditor's ability to collect the judgment if affirmed on appeal, to protecting the judgment debtor from substantial economic harm by appellate security requirements that may effectively preclude the ability to seek appellate review.' " *Ramco Oil & Gas Ltd.*, 171 S.W.3d at 916–17 (quoting Carlson, 46 S. Tex. L.Rev. at 1093).

Before House Bill 4, the focus was on protecting the judgment creditor's ability to collect the judgment if affirmed on appeal, and the law required the supersedeas amount to cover the entire amount of a money judgment, court costs, and "interest for the estimated duration of appeal." *See*

Former Tex.R.App. P. 24.2(a)(1) (requiring the security amount for money judgments to be at least "the amount of the judgment, interest for the estimated duration of appeal, and costs"). Under this former regime, though the appellate rule did not specify the principal upon which the interest was to be calculated, the context made it clear that the principal was the full amount of the judgment, which was a required part of the supersedeas amount.

Since the enactment of House Bill 4 into law, the full amount of the judgment is no longer protected.[9] *See* Tex. Civ. Prac. & Rem.Code Ann. § 52.006; Tex.R.App. P. 24.2(a)(1). In this context, it would be unreasonable to construe section 52.006(a) to require the security amount to include interest on the punitive damages. Some might conclude that the best course is to require the judgment debtor to provide security for the amount of the entire judgment, including any punitive damages, plus interest for the estimated duration of the appeal. But, under the clear and certain language of section 52.006(a), the Texas Legislature has made a different choice, and this court is charged with giving effect to that legislative choice. Under the unambiguous language of section 52.006(a), interest based upon the punitive disgorgement awards is not to be included in calculating the security amount.

Under Texas law and the common law of England and of various American states, the longstanding rule is that "interest follows principal." *See Phillips v. Washing-*

9. For example, under current law, if in its judgment the trial court awards $10 million in actual damages, a defendant whose net worth is $100 could supersede the entire judgment by filing a supersedeas bond in the amount of $50. *See* Tex. Civ. Prac. & Rem. Code Ann. § 52.006(b). If in its judgment the trial court awards $100 million in actual damages against a company whose net worth is $10 billion, the judgment debtor could su-

persede the entire judgment by posting a supersedeas bond in the amount of $25 million. *See id.* If in its judgment the trial court awards $1,000 in actual damages and $10 million in punitive damages against a company whose net worth is $10 billion, the $10 million in punitive damages would not be counted in calculating the security amount. *See id.*

*ton Legal Found.,* 524 U.S. 156, 165, 118 S.Ct. 1925, 1930–31, 141 L.Ed.2d 174 (1998) (concluding that "interest follows principal" rule has become "firmly embedded" in the common law of various states, including Texas); *City of Pearland,* 62 S.W.3d at 256 (stating "it is well settled in Texas that "'interest follows principal'"); *Beckford v. Tobin,* 27 Eng. Rep. 1049, 1051 (Ch. 1749) (stating rule that "interest follows principal" under English law). So inseparable are principal and interest that they are said to be joined like a body and its shadow. *See Phillips,* 524 U.S. at 165, 118 S.Ct. at 1930. Under the law, the two are individual components of a unitary concept. Given the logic of the age-old "interest follows principal" rule, and in the absence of clear statutory language to the contrary, it is unreasonable to construe section 52.006(a) to require the calculation of interest on an amount excluded from the principal. The Texas Legislature has given no indication of any intention to depart from this long-recognized principle and separate the body (a punitive damage award) from its shadow (interest on the punitive damage award) by excluding the former and including the latter in the prescribed calculation of the security amount. In the context of section 52.006(a), the only reasonable construction of "interest for the estimated duration of the appeal" is that such interest is not calculated based upon punitive damages that are not included in the principal security amount.[10] The

meaning of this statutory phrase is not ambiguous.[11]

Research reveals only one other case addressing this issue. *See Shook v. Walden,* 304 S.W.3d 910, 929 (Tex.App.-Austin 2010, no pet.). In that case, the court held that interest under section 52.006(a)(2) includes interest on amounts that are not compensatory damages or costs awarded in the judgment. *See id.* The *Shook* court cited no authority and did not discuss the "interest follows principal" rule. *See id.* Instead, the *Shook* court based its conclusion on the lack of an express statutory statement that interest is based only on compensatory damages and costs awarded in the judgment. *See id.* Although there is no such express statement, there is likewise no express statutory statement that interest is based upon the entire judgment amount. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 52.006(a); Tex. R.App. P. 24.2(a)(1). In addition, the *Shook* court did not address the new context in which the Legislature has decided that noncompensatory damages need not be protected when a judgment debtor supersedes a money judgment. *See Shook,* 304 S.W.3d at 929. The *Shook* court's analysis is not persuasive.

The trial court expressly stated that it did not base its security-amount calculations upon "compensatory damages awarded in the judgment." On appeal, Frankel's

---

10. A Texas legal scholar agrees with this construction. *See* Carlson, 46 S. Tex. L.Rev. at 1088.

11. In this court's order, the majority concludes this court need not address this important issue of statutory construction. The court's reasons are not clear, but it appears that the court has concluded that (1) in their first motion to lower bond, the Judgment Debtors asked this court to reverse the trial court's first order and to remand to the trial court with instructions to calculate the securi-

ty amount based upon interest on the disgorgement awards for the estimated duration of the appeal, (2) this court granted this relief on March 3, 2011, and (3) the trial court calculated the security amounts precisely as directed by this court. Any such conclusions are inaccurate for the reasons noted in the factual and procedural background section above. Inasmuch as the Judgment Debtors have not waived this issue and have presented it in their second motion, this court should address it.

counsel has stated that Frankel is not arguing that the interest made the basis of the trial court's calculations or post-judgment interest could be considered "compensatory damages awarded in the judgment." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 52.006(a)(1). Neither "interest for the estimated duration of the appeal" nor post-judgment interest accruing on the entire judgment reasonably could be construed to be "compensatory damages awarded in the judgment." *See id.* Under the plain meaning of the statute, "interest for the estimated duration of the appeal" is calculated based upon the compensatory damages. Therefore, such a construction would result in an interest component being counted twice in the calculation of the security amount. This construction is not reasonable. In addition, the trial court's calculation of "interest for the estimated duration of the appeal" is not an award made in the judgment, and post-judgment interest accrues as a matter of law under the Finance Code and is not awarded by the trial court in the judgment. *See* TEX. FIN. CODE ANN. § 304.001 (West 2010) (stating that money judgment of a Texas court must specify the post-judgment interest rate applicable to that judgment); *id.* § 304.005 (West 2010) (stating that postjudgment interest accrues as a matter of law on a money judgment of a Texas court); *The Office of the Attorney General of Texas v. Lee*, 92 S.W.3d 526, 528 (Tex.2002) (holding that by statute postjudgment interest accrues automatically on a Texas judgment, even if the judgment contains no reference to postjudgment interest). This construction does not conflict with the definition of "compensatory damages" in section 41.001(8) because that definition only applies in Chapter 41; it does not apply to section 52.006.[12] *See* TEX. CIV. PRAC. & REM CODE ANN. § 41.001(8) (West 2010) (defining "compensatory damages" "in this chapter"). The trial court's ruling cannot be upheld based upon "compensatory damages awarded in the judgment" under section 52.006(a)(1).

Under the unambiguous language of section 52.006(a), "interest for the estimated duration of the appeal" is not to be calculated based upon punitive damages awarded in the judgment. Even if the statute were ambiguous, there is no legislative history relating to this issue. Moreover, an analysis that entailed consideration of the object sought to be attained, the circumstances under which the statute was enacted, the former statutory provisions, and the consequences of each construction would result in the same conclusion.

### The security amount for each of the Judgment Debtors is zero.

Under the Texas Legislature's chosen formula, the security amount in this case is zero. Though this is an unusual result, this case involves an unusual judgment. Most judgments that parties seek to supersede on appeal contain compensatory damage awards, and even when no compensatory damages are awarded, the Texas Rules of Civil Procedure require every judgment to contain an award of court costs. *See* TEX. R. CIV. P. 131, 141; *Garza v. Slaughter*, 331 S.W.3d 43, 45, 48 (Tex. App.-Houston [14th Dist.] 2010, no pet.) (holding trial court erred in not awarding costs to any party in its judgment). The trial court rendered a judgment in which it

12. Under section 41.002(a), Chapter 41 "applies to any action in which a claimant seeks damages relating to a cause of action." TEX. CIV. PRAC. & REM CODE ANN. § 41.002(a) (West 2010). But no provision of Chapter 41 purports to apply to section 52.006 or to the calculation of the amount necessary to supersede a judgment. Section 41.001 limits the applicability of its definitions to Chapter 41. *See id.* § 41.001.

awarded millions in punitive damages but no compensatory damages or court costs. Under this unusual circumstance, the security amount under section 52.006(a) is zero.

In enacting section 52.006, the Texas Legislature unambiguously provided that a security amount could be zero, given that a judgment debtor's net worth can be zero or negative. *See* Tex. Civ. Prac. & Rem. Code Ann. § 52.006(b); *G.M. Houser, Inc. v. Rodgers,* 204 S.W.3d 836, 846 (Tex.App.-Dallas 2006, published order) (holding that security amount was zero as to judgment debtor that had a negative net worth).

For the reasons stated, this court should grant the Judgment Debtors' "Second Motion to Lower Bond" to the extent they request that this court order that the security amounts be lowered to zero for each judgment debtor.[13] Because it does not, I respectfully dissent.

---

13. Therefore, this court need not address the Judgment Debtors' alternative argument that the trial court abused its discretion by using eighteen months as the "estimated duration of the appeal" rather than twelve months.